## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES ANTHONY TATAR, | ) |
| | ) Civil Action No. 10-1410 |
| Petitioner, | ) |
| | ) |
| v. | ) District Judge David S. Cercone |
| | ) |
| JEFFREY BEARD, et al., | ) Magistrate Judge Cynthia Reed Eddy |
| | ) |
| Respondents. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.      RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and there is no basis upon which to issue a certificate of appealability.

### II.     REPORT

Petitioner, James Anthony Tatar, a state prisoner incarcerated at the State Correctional Institution at Coal Township, Pennsylvania has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in connection with his convictions for Murder in the First Degree; Endangering Welfare of Children; Abuse of Corpse; and related charges. For the reasons that follow, the Petition should be denied.

#### A. Relevant Factual and Procedural History

On direct appeal, the Superior Court set forth the following relevant facts.

"[James Anthony Tatar] and Janet Crawford, [Tatar's] fiancé, were the parents of K.T., who was born in 1999 with esophageal defects." ECF No. 6-3, pp. 2.

Westmoreland Children's Beauru [sic] became involved with this family and eventually took custody of [K.T.] for her failure to thrive and lack of medical attention on two occasions. Janet Crawford and [Petitioner] moved to a house located on Kepple Ave. . . . In September 2001, [K.T.] was returned to the custody of her parents and continued services to the family for period [sic] of 6 months. Armstrong Co. [Children and Youth Family Services (CYFS)] initiated services on 05/16/02, but [K.T.]'s parents refused to allow Intake worker Steven Fancells access to [K.T.] and refused to provide him with any medical information about her. On 10/16/02, Armstrong Counties['] CYFS discontinued services to the family."

ECF No. 6-3, p. 3. After multiple attempts to ascertain information about K.T.'s safety, CYFS

was unable to gain access to, or information about, K.T.'s well-being. Officials were granted a

warrant to search Petitioner's property for information about K.T. As laid out by the Superior

Court, probable cause was established for the search warrant.

Because [K.T.] has serious health and developmental problems and her parents do not have any medical insurance coverage and refuse to provide any information as to her treatment, there is probable cause to believe that her parents have been negligent in the proper care of [K.T.] and that she may be in serious medical distress. There is probable cause that if [K.T.] is receiving medical attention, there will be some record of this or a record of her location in side [sic] the house on Kepple Ave.

ECF No. 6-3, p. 5 (internal citations omitted). On August 7, 2003, police executed the search of

Petitioner's property.

Police discovered a plastic bag containing K.T.'s body in a cooler, which had been placed in a garbage can outside [Petitioner's]'s home. K.T. weighed approximately eleven pounds at the time her body was found. The trial court denied [Petitioner]'s motion to suppress evidence resulting from execution of the search warrant.

Appellant was charged and, on November 11, 2004, convicted of Murder in the First

Degree; Endangering Welfare of a Children; Abuse of a Corpse; Criminal Conspiracy –

Homicide; Criminal Conspiracy – Endangering Welfare of Children; Criminal Conspiracy –

Abuse of Corpse. Post-sentence motions were denied. Petitioner was sentenced to life

imprisonment without parole for the murder conviction. After Post Sentence Motions were

denied, Petitioner filed a timely appeal to the Pennsylvania Superior Court. Petitioner raised the

following issues in his appeal.

1.  Did the trial court err in finding that the search warrant issued by the honorable Joseph A. Nickleach contained probable cause to justify a search, in that the trial court held that the issuing authority was permitted to infer the source of information contained in the affidavit of probable cause and the reliability of that source?

2.  Did the trial court err in admitting the purported statement of [Petitioner] to Scott Bower because it was not disclosed to [Petitioner] in a timely manner?

3.  Did the trial court err in admitting the testimony of Scott Bower as rebuttal evidence?

4.  Did the trial court err in finding that the [Commonwealth's] unauthorized demonstration did not require a mistrial or new trial?

5.  Did the trial court err in finding that a new trial is not required because the [Commonwealth] knowingly presented perjured testimony?

6.  Did the trial court err in permitting Dr. Holly Davis to testify to her opinion that the starvation of the victim was deliberate?

ECF No. 6-3, pp. 5-6. The Superior Court of Pennsylvania affirmed Petitioner's judgment of

sentence on June 9, 2006. ECF No. 6-3. Petitioner filed a Petition for Allowance of Appeal to

the Pennsylvania Supreme Court, which was denied by that Court on February 14, 2007.

On June 11, 2007, Petitioner filed a petition for relief under the Pennsylvania Post

Conviction Relief Act (P.C.R.A), 42 Pa. Cons. Stat. § 9542. The court appointed counsel, who

filed an amended petition on February 7, 2008, in which he raised the following claims.

1.  Trial counsel was ineffective in failing to qualify under Pa. R. Cr. P. 801.

2.  Trial counsel was ineffective in failing to object, raise or preserve the erroneous burden instruction.

3.  Trial counsel was ineffective in failing to object to the erroneous instruction requiring a mandatory presumption.

4.  Trial counsel was ineffective in failing to request a limiting instruction regarding prior bad acts.

3

5. Trial counsel was ineffective in failing to object to comments on the defendant's pre-arrest silence.

6. Trial counsel was ineffective in failing to request a limiting instruction regarding the defendant's incarceration.

7. Trial counsel was ineffective in failing to raise and preserve the denial of an alibi instruction on direct appeal.

8. Trial counsel was ineffective in failing to object to repeated questions designed to force the defendant to comment on the truthfulness of other witnesses' testimony and to raise and preserve the issue on direct appeal.

9. A new trial is necessary based on after-discovered evidence.

ECF No. 6-4 pp. 6-7. Following a hearing on the P.C.R.A. petition, the Court denied it by order

dated January 8, 2009. Petitioner filed a timely notice of appeal to the Pennsylvania Superior

Court on January 12, 2009. On October 23, 2009, the Court affirmed the denial of P.C.R.A.

relief. Petitioner filed a Petition for Allowance of Appeal, which was denied by the Supreme

Court of Pennsylvania on May 5, 2010.

Petitioner filed his timely Petition for a Writ of Habeas Corpus with this Court on

October 20, 2010 wherein he raises the following claims.

1. Failure to meet requirements of a state rule of court Pa. R. Cr. P. 801, requiring certification to represent a defendant in a capital case.

2. Ineffective Assistance of Counsel due to failure to object to or preserve for appeal erroneous jury instruction. The trial court misspoke during final jury instructions, in one instance saying "guilty" instead of "not guilty."

3. Ineffective Assistance of Counsel due to failure to object to or preserve for appeal evidence of prior bad acts and evidence of defendant's pre-arrest silence.

4. Ineffective Assistance of Counsel due to the failure to assert an alibi defense.

5. Ineffective Assistance of Counsel due to the failure to request a "low grade expert opinion" instruction. This is to the testimony of Dr. Holly Davis.

6. Ineffective Assistance of Counsel due to the failure to make an "asked and answered"

4

objection during cross-examination of the defendant.

7. Failure to sequester the jury immediately upon selection, rather than sequester them at the start of the trial.

8. Ineffective Assistance of Counsel due to the failure to impeach expert witnesses.

9. "Cumulative Effect" of all other alleged grounds.

10. Trial judge should have recused himself.

11. "After discovered evidence" of altered documents relied upon by expert witnesses, and discovery of a hair-like substance during trial on a piece of evidence.

## B. Standard of Review

In describing the role of federal habeas corpus proceedings, the Supreme Court of the

United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996,

Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal

habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

'retrials' and to ensure that state-court convictions are given effect to the extent possible under

law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of

review for federal court review of state court criminal determinations and provides, in relevant

part, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on

the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant state-court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. Greene v. Fisher, ___ U.S. ___, 132 S.Ct. 38 (2011); Cullen v. Pinholster, 563 U.S. ——, 131 S.Ct. 1388, 1398 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves an unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Williams, 529 U.S. at 407. "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. ——, ——,131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 786–87.

A recent decision of the Supreme Court illustrates the deference that the federal courts must accord to state court decisions. In Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855 (May 3, 2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

Lett, 130 S.Ct. at 1862. The Supreme Court further instructed:

7

> It is not necessary for us to decide whether the Michigan Supreme Court's decision - or, for that matter, the trial judge's declaration of a mistrial - was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, People v. Lett, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event - for the reasons we have explained - **whether the trial judge was right or wrong is not the pertinent question under AEDPA.**

*Id.* at 1865, n. 3 (emphasis added).[1] *See also* Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

## C. Review of Petitioner's Claims

### 1. Failure to Meet Pa. R. Cr. P. 801 Requirements –Claim 1

Petitioner's first claim is based upon an alleged misapplication of Pennsylvania law. In his federal habeas corpus petition, Petitioner raised this issue solely in terms of trial court error in allowing trial counsel to proceed without meeting the education and experience requirements of

---

1. *See also* Harris v. Ricci, 607 F.3d 92, 99 (3d Cir. 2010) (explaining and applying Lett).

Pa. R. Cr. P. 801. He cited to no federal or constitutional authority in support of his claim for federal habeas relief. It is well known that a state prisoner like Petitioner may not be granted federal habeas corpus relief unless he demonstrates that he is in custody in violation of the United States Constitution or federal law. *See* 28 U.S.C. § 2254(a). *See also* Smith v. Phillips, 455 U.S. 209 (1982); Geshchwendt v. Ryan, 967 F.2d 877 (3d Cir.), *cert. denied*, 506 U.S. 977 (1992); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991). Thus, mere violations of state law or procedural rules cannot provide the basis for federal habeas relief absent a deprivation of constitutional magnitude. Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991), *cert. denied*, 505 U.S. 1223 (1992).

In order for Petitioner's first claim to be cognizable, the violation of state law must cause a deprivation of a constitutional right, namely the Sixth Amendment right to effective counsel. In support of this claim, Plaintiff alleges no facts that support that a violation of Pa. R. Cr. P. 801 rises to constitutional proportions. Further, the PCRA court ruled that no such violation of state rules exists.

> The facts show that [Petitioner's counsel] was appointed to represent [Petitioner] on August 12, 2003 . . . On October 25, 2004, Defendant's trial began with jury selection. Rule 801 did not become effective until November 1, 2004 . . . In this case, [Petitioner's counsel] was appointed approximately 10 months prior to the time Rule 801 was promulgated and approximately 15 months prior to the date the rule took effect. Clearly then, according to explicit dictates of [Commonwealth v. Boxley, 948 A.2d 742 (Pa. 2008)], Rule 801 was not violated. This claim has no arguable merit and is denied.

ECF No. 12-1 pp. 3-5. Consequently, Petitioner is not entitled to federal habeas corpus relief with respect to Claim 1.

### 2. Ineffective Assistance of Counsel: Claims 2, 3, 4, 5, and 6

Petitioner raises several claims of ineffective assistance of counsel. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial."

9

Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). *See also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (holding that the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair and unreliable. Strickland, 466 U.S. at 689. A defendant is not entitled to relief unless he makes both showings. *Id.* at 687. Moreover, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id.* at 694. The Strickland standard applies equally to appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2002).

In analyzing Petitioner's claims under the two-part test announced in Strickland, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under Strickland is a mixed question of law and fact; it requires the application of a legal

10

standard to the historical, fact determinations. Berryman, 100 F.3d 1089, 1095 (3d Cir. 1996).

In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which

the presumption applies. *Id.* Likewise, a state court's determination that a decision was a

tactical one is a question of fact. *Id.*

The Supreme Court recently reiterated the difficulty of prevailing on an ineffectiveness

claim on habeas review.

> The pivotal question is whether the state court's application of the
> Strickland standard was unreasonable. This is different from asking whether
> defense counsel's performance fell below Strickland's standard. Were that the
> inquiry, the analysis would be no different than if, for example, this Court were
> adjudicating a Strickland claim on direct review of a criminal conviction in a
> United States district court. Under AEDPA, though, it is a necessary premise that
> the two questions are different. For purposes of § 2254(d)(1), "an unreasonable
> application of federal law is different from an incorrect application of federal
> law." A state court must be granted a deference and latitude that are not in
> operation when the case involves review under the Strickland standard itself.

Harrington v. Richter, ___ U.S. ___, 131 S.Ct. 770, 785 (2011) (internal quotations and citations

omitted). The Court further instructed:

> Surmounting Strickland's high bar is never an easy task. An ineffective-
> assistance claim can function as a way to escape rules of waiver and forfeiture and
> raise issues not presented at trial, and so the Strickland standard must be applied
> with adversary process the right to counsel is meant to serve. Even under de novo
> review, the standard for judging counsel's representation is a most deferential
> one. Unlike a later reviewing court, the attorney observed the relevant
> proceedings, knew of materials outside the record, and interacted with the client,
> with opposing counsel, and with the judge. It is all too tempting to second-guess
> counsel's assistance after conviction or adverse sentence. The question is whether
> an attorney's representation amounted to incompetence under prevailing
> professional norms, not whether it deviated from best practices or most common
> custom.
>
> Establishing that a state court's application of Strickland was unreasonable
> under § 2254(d) is all the more difficult. The standards created by Strickland and
> § 2254(d) are both highly deferential and when the two apply in tandem, review is
> doubly so. The Strickland standard is a general one, so the range of reasonable
> applications is substantial. Federal habeas courts must guard against the danger
> of equating unreasonableness under Strickland with unreasonableness under

§2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S.Ct. at 788 (internal quotations and citations omitted).

Petitioner presented five claims of ineffective assistance to the state courts in his PCRA proceeding and direct appeal. In his second claim, he asserted that his trial counsel rendered ineffective assistance by failing to object to or reserve for appeal an erroneous jury instruction. Petitioner asserts that during the course of a lengthy and repetitive jury instruction, the trial judge's mistaken use of the word "guilty" instead of "not guilty" in one instance, was prejudicial because it lowered the burden of proof and increased the possibility of his conviction. As the PCRA court lays out in its Opinion and Order, "the sentence in question was just a small part of a lengthy instruction which made the correct standard crystal clear. The Court had just finished giving a detailed explanation of reasonable doubt . . . Trial counsel did not err by failing to object to the charge or preserve the issue for appeal, and Petitioner was not prejudiced by the Court's charge." ECF No. 12-1 pp. 6-8. Even under *de novo* review, Petitioner's claim would fail under both prongs of the Strickland standard for ineffective assistance of counsel claims.

Petitioner asserts in his third claim that his trial counsel rendered ineffective assistance by failing to object to or preserve for appeal evidence of prior bad acts and evidence of his pre-arrest silence. This claim can be divided into two parts.

A. Failure to object to evidence of prior bad acts

This claim was denied by the PCRA court. The trial court permitted the admission into evidence of prior bad acts by Petitioner related to his maltreatment of K.T.. Petitioner's counsel attempted to exclude this evidence before trial by motion *in limine*. The trial court denied this motion pursuant to Pa. R. E. 404(b)(2) and (3). When evidence is permitted pursuant to this rule,

12

a limiting instruction may be requested by counsel about the evidence. Though Petitioner's counsel and the PCRA court admit that it would have been reasonable to request such a limiting instruction, the PCRA court correctly points out that "there is no reasonable probability that the outcome of the proceedings would have been different had trial counsel asked for and the Court granted such a limiting instruction." ECF No. 12-1 p. 15. Petitioner's claim fails under Strickland's second prong, requiring actual prejudice. The PCRA court correctly applied this standard, and therefore, this claim should be denied.

## B. Failure to object to comment on pre-arrest silence

In respect to this claim, the PCRA court explained that the testimony concerning Petitioner's pre-arrest silence was admissible for two reasons. First, Petitioner "never invoked his 5th Amendment right to be silent or his 6th Amendment right to counsel. *See* N.T. 1328-1348." ECF No. 12-1 p. 16. Second, even if Petitioner had asserted his 5th and 6th Amendment rights, Petitioner "opened the door" to impeachment of his own testimony about his pre-arrest silence. During his testimony in his trial, Petitioner asserted that he had been as helpful as possible to the police. This allowed the prosecution to impeach this testimony with evidence of pre-arrest silence on the part of Petitioner. When applying prong one of the Strickland standard to this claim, the PCRA court concluded that "trial counsel were correct in not raising the issue, as it had no arguable merit. There was no valid reason to challenge the introduction of [Petitioner]'s statements and refusal to cooperate. Therefore, trial counsel were not ineffective in failing to object to and appeal." ECF No. 12-1 p. 19. Because the Strickland standard demands that both prongs be satisfied, the PCRA court correctly applied the standard and denied the claim.

Petitioner asserts in his fourth claim that his counsel rendered ineffective assistance by

13

failing to raise and preserve the denial of an alibi defense on direct appeal. Alibi is only a defense when a defendant is in a different place at the relevant time of a crime and it would, therefore, be impossible for him to be guilty. *See* Commonwealth v. Bonomo, 151 A.2d 441 (Pa. 1959). Petitioner's counsel raised the issue of an alibi defense and subsequently presented evidence that Petitioner had not been at home on many of the days and times that Crawford had said he was home, but the trial court concluded, and Petitioner's counsel agreed, that this evidence did not legally constitute an alibi defense. "It was not evidence that made it impossible for Mr. Tatar to have committed the crimes he was accused of committing." PCRA Hearing N.T. at 31. The PCRA court thereby determined that Petitioner's counsel did not err by failing to raise the alibi issue on direct appeal. Therefore, the court correctly disposed of the first prong of the Strickland standard for ineffective assistance of counsel. This claim should be denied.

Petitioner asserts in his fifth claim that his trial counsel rendered ineffective assistance due to his failure to have requested a "low grade expert opinion" instruction with respect to the testimony of Dr. Holly Davis. This particular ineffective assistance claim is procedurally defaulted, as discussed more fully below under section 3, because Petitioner failed to raise it in either his PCRA proceedings or his direct appeal.

Even if it were assumed, for the sake of argument, that this claim is not defaulted, under *de novo* review, which is the standard most favorable to Petitioner, this claim would still fail. At issue in Petitioner's direct appeal was the trial court's admittance of Dr. Davis' testimony and the denial of a limiting instruction. The Superior Court of Pennsylvania determined that the trial court's allowance of the testimony was proper because "even if Dr. Davis improperly opined about [Petitioner]'s presence at the time of K.T.'s fatal malnourishment, [Petitioner] rendered any potential error harmless by eliciting from Dr. Davis an admission that she lacked knowledge

14

of his whereabouts at the relevant times." ECF No. 6-3 pp. 18-19. Trial counsel therefore acted reasonably in not requesting a "low grade expert opinion" instruction because such a request would not be meritorious. Further, no prejudice resulted from the lack of limiting instruction because of Dr. Davis' admission of a lack of knowledge. Therefore, under *de novo* review, using the Strickland standard, this claim would be denied for failing to meet either of the two requisite prongs.

Petitioner asserts in his sixth claim that his trial counsel rendered ineffective assistance by failing to make an "asked and answered" objection during cross-examination of the defendant. The PCRA court determined that the case on which Petitioner relied to indicate the inappropriateness of the line of questioning at issue, United States v. William Harris, 471 F.3d 507 (3d Cir. 2006), was not binding on Pennsylvania courts. Still, the PCRA court concluded that even Harris allows for the type of questioning at issue, because Petitioner "opened the door" to such questioning by differing in testimony from other witnesses. "The prosecution had the right to focus [Petitioner] on the differences and similarities between his testimony and that of others." ECF No. 12-1 p. 28. The PCRA court admits that "perhaps trial counsel should have objected on the basis of relevance or competency to any questions seeking [Petitioner]'s opinion on the testimony of other witnesses." The PCRA court ultimately leaves this question unanswered, because the second prong of the Strickland standard remained unsatisfied: The questioning and the responses could not have possibly affected the outcome of the trial. This is a proper application of the Strickland standard. Thus, claim should be denied.

### 3. Failure to Sequester Jury; Failure of Counsel to Impeach Expert Witnesses, Cumulative Effect of other Claims; and Trial Judge should have recused himself: Claims 7, 8, 9, and 10

A. Exhaustion Requirement

15

The provisions of the federal habeas corpus statute at 28 U.S.C. 2254(c) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, mandamus proceedings, or other available procedures for judicial review. *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). A petitioner can "fairly present" his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *Id.* at 260. Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address it. Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir. 1989).

In addition, in order to exhaust his claims, a habeas corpus petitioner must "properly present" his claims to the state courts. In this regard, a petitioner must invoke "one complete round" of the applicable State's appellant review process, thereby giving the courts of that State "one full opportunity" to resolve any issues relevant to such claims. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion would be considered satisfied). The petitioner has the burden of establishing that exhaustion has

16

been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O"Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).[2]

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (2d Cir. 1997; Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall not be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. 2254(c).

B.    Procedural Default Doctrine

Beyond the question of exhaustion is the doctinre of procedural default. In this regard, the mere fact that a petitioner can satisfy the statutory exhaustion requirement on the ground that further state procedures are unavailable does not necessarily mean that a federal court can reach the merits on his or her claims. Claims deemed to have been exhausted because of a state procedural bar are procedurally defaulted precluding a federal court from proceeding to address them further. In Cone v. Bell, 556 U.S. 449, 129 S.Ct. 1769 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the States' interest in correcting their own mistakes is respected in all federal habeas

---

2. On May 9, 2000, the Pennsylvania Supreme Court issued In re: Exhaustion of State Remedies in Criminal and Post Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Order 218), which provides that direct criminal appellants and PCRA petitioners need not file petitions for allowance of appeal in order to exhaust all "available" state remedies for habeas corpus purposes. Order 218 applies only prospectively and it has no application to cases involving petitioners whose time for seeking discretionary review had already expired prior to May 9, 2000. Wenger v. Frank, 266 F.3d 218, 226 (3d Cir. 2001).

cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

Cone, 127 S.Ct. at 1780 (internal quotations and citations omitted).

Federal habeas corpus review is not barred every time that a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner. A state procedural rule can preclude federal habeas corpus review only if it is "firmly established" and "consistently and regularly applied" by the State's courts. Kindler v. Horn, 542 F.3d 70, 78 (3d Cir. 2009). Specifically, the state rule must speak in unmistakable terms, and the state courts' refusal to review a petitioner's claim must be consistent with decisions in similar cases. *Id.* at 79. An "occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate." Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Amos v. Scott, 61 F.3d 333, 342 (5th Cir. 1995)). A state rule is adequate to preclude federal habeas corpus review if it is applied by state courts in "the vast majority of cases." Dugger v. Adams, 489 U.S. 401, 410, n. 6 (1989).

Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996). A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal

18

law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

In Claims 7, 8, 9, and 10, Petitioner sets forth claims of failure to sequester the jury immediately upon selection, ineffective assistance of counsel due to failure to impeach expert witnesses on cross examination, cumulative effect of all other alleged grounds, and that the trial judge should have recused himself. Despite requirements under Pennsylvania law, Petitioner did not raise these claims in his direct appeal. He also failed to present these issues to the Superior Court on appeal from the denial of his PCRA. Consequently, Petitioner has procedurally defaulted these claims for purposes of federal court review. *See* Buck v. Colleran, 115 Fed. App'x 526 (3d Cir. 2004) (holding failure to comply with Rule 1925(b) constitutes a procedural default); Konya v. Meyers, Civil No. 03-4065, 2004 WL 1171730, *3 (E.D. Pa. May 24, 2004) ("due to petitioner's failure to comply with Pennsylvania's Rule 1925(b), petitioner's claims are procedurally defaulted under Pennsylvania law."); Willis v. Varner, Civil No. 03-1692, 2004 WL 1109780, *7 (E.D. Pa. May 13, 2004) ("The Superior Court's conclusion that Petitioner's due process claim was waived for failure to include it in Petitioner's 1925(b) statement is based upon an adequate and independent state procedural rule."). *Cf.* Lines v. Larkins, 208 F.3d 153, 162 (3d Cir. 2000) (noting that the Pennsylvania courts strictly adhere to the letter of its procedural rules and will not address claims that are not properly asserted as required under the Pennsylvania Rules of Appellate Procedure). *See also* Werts v. Vaughn, 228 F.3d 178, 194 (3d Cir. 2000); Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996) (recognizing that the Pennsylvania courts would hold that Doctor waived the right to assert his claim because his submissions to the Superior Court and/or the Pennsylvania Supreme Court failed to include the claim).

19

Petitioner has set forth no bases upon which to overcome his defaults. Consequently, he is not entitled to relief as to claims 7, 8, 9, and 10.

### 4. After Discovered Evidence: Claim 11

Petitioner's final claim asserts that certain documents upon which Dr. Davis had relied to form her opinion had been altered and that more than one thousand pages of notes about K.T., never reviewed by Davis, were destroyed after trial. The PCRA court determined that the destroyed notes would have been far more damning than the documents that Dr. Davis actually did review. The PCRA court further found that any alterations to the documents that Dr. Davis had used to form her opinion were *de minimus*. ECF 12-1 pp. 29-31.

In reviewing a state court conviction, a federal habeas court must presume any factual findings made by the state courts to be correct. 28 U.S.C. § 2254(e)(1). On habeas review, the petitioner has the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). To obtain relief based upon newly-discovered evidence under the PCRA, appellant must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at-or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. Commonwealth v. Washington, 592 Pa. 698, 715, 927 A.2d 586, 595-596 (2007). The PCRA court applied this standard correctly by determining that the fourth prong is not satisfied. This decision is not contrary to or an unreasonable application clearly established federal law.

Within Petitioner's eleventh claim, he states that the trial court's failure to test a "hair like substance," found at the crime scene for DNA is a violation of his constitutional rights. This court notes that this claim has not been presented before any court on direct appeal or during the

PCRA proceedings. Thus, it has been procedurally defaulted for purposes of this Court's review. Moreover, without Petitioner demonstrating that a favorable result of the requested DNA testing would establish Petitioner's actual innocence, there is no established constitutional right demanding DNA testing of evidence. "In DNA as in other areas, an absence of evidence is not evidence of absence." Commonwealth v. Brooks, 2005 PA Super 185, 875 A.2d 1141, 1147 (Pa. Super. Ct. 2005). As such, this claim should be denied.

## D. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied. It is further recommended that there is no basis upon which to grant a certificate of appealability.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. '636(b)(1)(B) & (C)] and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver

21

of that party's appellate rights.

Cynthia Reed Eddy
United States Magistrate Judge

James Anthony Tatar
GD-5646
S.C.I. Coal Township
1 Kelley Drive
Coal Township, PA 17866